

**FILED**

Apr 20 2015, 9:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT, PRO SE

Stephen F. Smith
South Bend, Indiana

ATTORNEYS FOR APPELLEE

William G. Murphey
Kopka Pinkus Dolin PC
Crown Point, Indiana

A. Robert Masters
Nemeth Feeney Masters & Campiti PC
South Bend, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Stephen F. Smith,

*Appellant-Defendant/Counter-Plaintiff,*

v.

Foegley Landscape, Inc.,

*Appellee-Plaintiff/Counter-Defendant.*

April 20, 2015

Court of Appeals Cause No.
71A03-1405-SC-169

Appeal from the St. Joseph Superior Court

Lower Court Cause No.
71D01-1307-SC-5420

The Honorable Michael P. Scopelitis, Judge

**Pyle, Judge.**

## Statement of the Case

Appellant-Defendant/Counter-Plaintiff, Stephen F. Smith ("Smith"), appeals the small claims court's judgments in favor of Appellee-Plaintiff/Counter-Defendant, Foegley Landscape, Inc. ("Foegley Landscape"), on its breach of

contract claim and on Smith's tort and promissory estoppel counterclaim.[1]  He also appeals the small claims court's award of attorney fees to Foegley Landscape.  Foegley Landscape brought a claim against Smith in small claims court alleging that he had breached a contract for landscaping services by failing to pay the money he owed on the contract.  Smith filed an answer and counterclaim arguing that Foegley Landscape, instead, had breached the contract because it had damaged the drainage system on Smith's house in the process of completing the landscaping project.  In his counterclaim, Smith requested damages for the broken drainage system.  After a bench trial, the small claims court found in favor of Foegley Landscape on both the claim and counterclaim, entered judgment for the amount owed under the contract, and also awarded Foegley Landscape attorney fees and costs.

On appeal, Smith argues that the small claims court erred in finding in favor of Foegley Landscape on both the claim and counterclaim because the company did not present any evidence contradicting his argument that it had damaged his drainage system.  Accordingly, Smith asserts, the company breached its contractual promise to fulfill the contract in a "workmanlike manner" and was liable for damages for the drainage system.  Alternately, Smith argues that the small claims court abused its discretion in awarding Foegley Landscape attorney fees because its insurer actually paid for one of the attorneys and

---

[1] In his counterclaim, Smith also argued that Foegley Landscape was liable under theories of fraud and breach of contract, but he does not raise those arguments on appeal.

because there was insufficient evidence to determine the reasonableness of the fees. We conclude that, contrary to Smith's arguments, Foegley Landscape presented evidence that it did not damage Smith's drainage system, and we therefore affirm the small claims court's judgments on the claim and counterclaim. However, we also conclude that there was not sufficient evidence for the small claims court to determine the reasonableness of Foegley Landscape's attorney fees. Accordingly, we reverse the small claims court's award of attorney fees and remand to the court so it can hold a hearing and determine reasonable attorney fees.

We affirm in part, reverse in part, and remand.

# Issues

1. Whether the small claims court erred when it entered judgment in favor of Foegley Landscape on its breach of contract claim and on Smith's tort and promissory estoppel counterclaims.

2. Whether the small claims court abused its discretion in awarding Foegley Landscape attorney fees.

In early June 2012, Smith and his wife ("Mrs. Smith") (collectively, "the Smiths") contacted Foegley Landscape about landscaping their yard. They had developed a good opinion of Foegley Landscape because they had seen the company complete work on their neighbors' yard and thought the company had done a "beautiful job." (Tr. 72).

Shortly thereafter, Aaron Laskowski ("Laskowski"), who works in sales and management at Foegley Landscape, met with Smith to discuss the potential landscaping project. He and Smith walked around Smith's yard together so that he could get an idea of the landscaping changes Smith wanted to make and could formulate a landscape plan.

Subsequently, on June 25, Laskowski returned to the Smith house with a completed landscape proposal. It provided that, for $5,966, Foegley Landscape would remove the plants, debris, and weeds along the front of the foundation of the Smiths' house; level out a "hump" that the previous owner had left in the

---

[2] Smith's Statement of Facts includes argument, which is inappropriate in that part of an appellate brief. *Elliot v. Sterling Mgmt. Ltd., Inc.*, 744 N.E.2d 560, 562, n.1 (Ind. Ct. App. 2001). Although Smith is pro se in this proceeding, he is also an attorney and a professor at the University of Notre Dame, and we hold him to the same standards as other attorneys. (Tr. 65, 66, 90). Accordingly, we remind Smith that a Statement of the Facts should be a concise narrative of the facts stated in a light most favorable to the judgment and should not be argumentative. *Elliot*, 744 N.E.2d at 562, n1. *See* Ind. Appellate Rule 46. Smith also attempts to inappropriately discredit the small claims court by writing, (1) "[s]adly, the trial judge was not interested in doing justice", and (2) "In his zeal to help a landscaping company collect a contract price it clearly had not earned—and that even counsel for appellee feared it might be held not to have earned—the trial judge committed several legal errors." (Smith's Br. 1, 2). We refer Smith to Indiana Appellate Rule 46 for the proper format and placement of arguments in an appellate brief.

planting bed; edge the yard; install bark mulch; and install several plants. (Tr. 17). The Smiths would have to pay fifty percent of the total price upon signing the proposal and the rest upon completion of the project. They would also be liable for "[a]ny cost including reasonable attorney fees, incurred in the collection of this contract[,]" and a "2% service charge per month – 24% Annual percentage rate on all accounts past 30 days." (Foegley Landscape's Ex. 1). The Smiths agreed to these terms and endorsed the contract. They paid the down payment of $3,000, fifty percent of the project price, and a crew from Foegley Landscape began the landscaping project two to three weeks later.

[6] Around the end of July, Foegley Landscape completed the first stage of the work, which involved removing the plants, debris, and "hump" in the Smiths' yard. (Tr. 17). By the end of August, the crew members had installed the mulch and plants and completed the landscaping. However, before the crew left the property, Laskowski conducted a final inspection to confirm that they had completed all of the landscaping required under the contract.

[7] During the inspection, Laskowski noticed that only one of the downspouts on the house was connected to a drain tile, and the tile looked "like it was installed incorrectly." (Tr. 22). A drain tile is a pipe that attaches to a gutter's downspout and directs water away from a house. The other end of the tile is usually buried underground and prevents water from collecting around the house and causing water damage. The drain tile that Laskowski thought was installed incorrectly ran parallel to, rather than away from, Smith's house. However, because the Smiths had not contracted with Foegley Landscape to fix

their drainage system, Laskowski determined that the company had fulfilled its obligations under the contract.

[8] As a result, on August 31, 2012, Foegley Landscape sent Smith an invoice for $2,996, which was the remaining amount the Smiths still owed under the contract. The invoice included a note recommending that the Smiths take the next step of adding underground drain tiles to all of the downspouts on the house.

[9] Over the following months, the Smiths failed to pay the amount they owed. On December 6, 2012, the President and Owner of Foegley Landscape, John Foegley ("Foegley"), sent Smith a letter telling him that he owed $3,242.97 as a result of service charges for non-payment and requesting that Smith call him if he wished to discuss the matter. Smith did not call or otherwise respond to Foegley's letter.

[10] During that same period, the company also tried to contact Smith through his work e-mail address and by mailing him letters. Laskowski attempted to contact Smith by telephone several times and left a voicemail each time. He only heard back from Smith once in April 2013 when Smith called saying that something in the landscaping project was still incomplete, but "[he] had to get with [his] wife to find out what that was." (Tr. 42). He told Laskowski that he would get back with him, but he never did.

[11] Sometime during the spring of 2013, Foegley asked the company's Vice President, Brian Hominiuk ("Hominiuk"), to visit Smith's house and find out if

there was a reason that Smith had not paid.[3]  When Hominiuk did so, Smith answered the door and told him that "he [had] to talk to [his] wife but [he] believe[d] there were some downspouts that were taken[.]" (Tr. 115). Hominiuk told Smith that the house's drainage was not a part of the contract, but he agreed to bring a crew back out to work on the drain system to "make [Smith] happy." (Tr. 118).  He specified, though, that the crew members would not do any further work until he received payment for the work that they had already completed.  Smith agreed, and the two set an appointment for Hominiuk to return with a crew.

[12]  Two weeks later, Hominiuk returned to the Smith house on the day they had designated to meet.  He did not have a crew with him because he intended to meet with Smith to receive payment and set up for the two crew members, who were delayed.  When he arrived, Hominiuk knocked on Smith's door, but Smith did not answer.  Smith was home but did not answer because he did not see a crew with Hominiuk and thought he was just trying to collect payment. However, when Smith did not answer the door, Hominiuk told the crew members not to come to the house as they had planned.  After lunch, he tried to see if Smith was home, but, again, there was no answer at the door.

[13]  In May or early June of 2013, Foegley sent Smith a letter reiterating that Foegley Landscape had completed the work the contract had required, that

---

[3] Hominiuk testified that he thought this occurred in the summer of 2013, but it is apparent from the record that it occurred in late spring 2013.

Smith had not responded to the company's attempts to contact him, and that Smith had failed to meet with Hominiuk to pay as they had agreed. Foegley wrote that the balance on the account had reached $3,580.51 with service charges and told Smith that if Foegley Landscape did not receive payment before June 7, 2013, it would turn the matter over to the company's attorneys for collection. He sent the letter by certified mail, but the post office sent it back with writing on the envelope stating "return to sender, moved, left[] no address." (Tr. 91).

[14] On July 9, 2013, Foegley Landscape filed a breach of contract claim against Smith in small claims court, requesting "up to $6,000[,]" including $3,580.51 for the unpaid contract balance and service charges, additional amounts for accruing service charges and interest, reasonable attorney fees, and court costs. (App. 10). On August 8, 2013, Smith filed an answer and counterclaim in which he denied the charges against him and claimed that Foegley Landscape had destroyed his water drainage system and had not replaced it. He argued that the company was liable to him under legal theories of breach of contract, promissory estoppel, fraud, and tort, and he argued for compensatory damages in the amount of his $3,000 deposit, plus the amount necessary to repair the drainage system.

[15] On November 12, 2013, Foegley Landscape filed two affidavits with the trial court. In the affidavits, two of the company's employees stated that they performed the landscaping work on Smith's yard and had not removed or

damaged any drain tiles on the house. Although the company filed these affidavits with the court, it did not attempt to admit either of them at trial.

[16] The next day, November 13, 2013, the small claims court held a bench trial on the claim and counterclaim. At trial, Laskowski and Foegley detailed the attempts they had made to contact Smith about payment.[4] With respect to the drain tiles, Laskowski testified that he "was in daily communication with the crews that were [at the Smith house] and they said they never ran into any tiles." (Tr. 23). He explained that drain tiles are "extremely" difficult to remove because when they have been in the ground for a while, they have a lot of debris in them, and tree and shrub roots anchor them into the ground. (Tr. 37). Due to this difficulty, he said that Foegley Landscape would typically cap a drain tile off and leave it underground before it would remove one.

[17] Smith and Mrs. Smith also testified at the trial. Mrs. Smith said that one day when the crew members were working on the landscaping, she walked through the yard and saw one of the drain tiles "ripped off" and "off to the side." (Tr. 78). She claimed that one of the workers saw her reaction to the sight and said "don't worry, Mrs. Smith[.] [A]nything we take out we will replace[.]" (Tr. 78). Then, according to Mrs. Smith, the workers left without repairing the drain tiles. She said they removed all of the tiles, except for one, which was positioned parallel to the house and did not work properly. On cross-

---

[4] Laskowski testified that by the date of trial, the total amount Smith owed on the contract was $3,875.68 due to continued accrual of interest after Foegley Landscape filed its complaint.

examination, however, Mrs. Smith changed her story slightly and stated that the drain tile that she claimed had been "ripped off" and "off to the side" had actually still been in the ground when she saw it, only exposed. (Tr. 78).

[18] In regards to the Smiths' failure to pay Foegley Landscape's invoice, the Smiths both testified that they believed the work was incomplete—and therefore their payment was not due—because Foegley Landscape had not replaced the drain tiles. Mrs. Smith said that when the crew members left the Smiths' house for the last time, she kept expecting them to return to repair the drainage system.

[19] Finally, in regard to Foegley Landscape's attempts to contact the Smiths, Mrs. Smith denied that either she or Smith had received Foegley's May or June 2013 letter that the post office had returned with the writing "return to sender, moved, left[] no address." (Tr. 91). Smith stated that he did not get the letters from Foegley Landscape because he did not get the mail very often.

[20] At the conclusion of the trial, Foegley Landscape introduced fee affidavits from its two attorneys, A. Robert Masters ("Attorney Masters") and William G. Murphey ("Attorney Murphey"). Attorney Masters, the attorney-of-record, averred that his firm had billed Foegley Landscape $500 for its preparation of the complaint and representation of Foegley Landscape in court, as well as $81 for the filing fee and $13 for the sheriff's filing fee. Attorney Murphey averred that his fees totaled $4,045.90, although he did not include an hourly rate or any other explanation of his fee. Attorney Masters explained to the court that there were two affidavits because he had been retained to prepare the arguments

related to the complaint, and Attorney Murphey had been retained when Smith filed his counterclaim. Attorney Masters implied, but did not explicitly state, that Foegley Landscape's insurer had retained Attorney Murphey to help with Foegley Landscape's defense.

[21] The small claims court took the matter under advisement to allow Smith time to submit pictures he had taken of the house's downspouts.[5] Smith filed the pictures, and on January 9, 2014, the small claims court entered judgment of $5,410.55 in favor of Foegley Landscape on its complaint. This amount included the principal amount of the claim, interest through the date of judgment, and "reasonable" attorney fees of $1,500. (App. 5). In addition, the small claims court awarded Foegley Landscape costs of the action in the amount of $94 and entered judgment in favor of Foegley Landscape on Smith's counterclaim.

[22] On February 7, 2014, Smith filed a motion to correct error. Although his motion is not a part of the record, it is apparent that he argued that the small claims court's award of attorney fees was excessive because the contract allowed Foegley to recover only "reasonable attorney fees incurred in the collection of this contract," rather than fees incurred defending against a counterclaim. (App. 7). The small claims court held a hearing on the motion on April 9, 2014, and denied it on April 22, 2014, holding that Smith's

---

[5] Smith had brought his camera to court with the pictures on it, but he had not printed them off in order to admit as exhibits.

interpretation of the contract language was too narrow. The small claims court also found that its $1,500 award of attorney fees was reasonable "in light of the time and effort expended to pursue [Foegley Landscape's] claim through the court system" and in light of "the amount of the remaining balance owed by Smith on the contract." (App. 7). Smith now appeals.

## Decision

[23] On appeal, Smith challenges the small claims court's judgments in favor of Foegley Landscape on both the claim and counterclaim. With respect to the claim, he argues that Foegley Landscape failed to fulfill its contractual requirements in a "workmanlike manner," as required by the contract, because the company broke his drainage system and failed to replace it. Accordingly, he argues that Foegley Landscape breached the contract, and he was not liable for payment. With regards to the counterclaim, Smith asserts that the trial court erred in entering judgment against him because Foegley Landscape should have been liable to him for removing the drainage system under a theory of either tort or promissory estoppel. Finally, Smith argues that even if the trial court did not err in entering judgment under either the claim or counterclaim, the attorney fees it awarded Foegley Landscape were unreasonable. Because Smith's arguments concerning the claim and counterclaim are dependent on the

evidence regarding the drainage system, we will address that issue first and then turn to the issue of attorney fees.[6]

## 1. Judgments on the Claim and Counterclaim

[24] First, Smith asserts that the trial court erred in deciding in favor of Foegley Landscape on both the claim and counterclaim because there was no evidence in the record disputing his claim that the crew members damaged his drainage system. He argues that the only evidence Foegley Landscape presented on the issue were its employees' two affidavits that it filed with the small claims court but did not seek to admit at trial. As the affidavits were not admitted at trial, he contends that the only evidence presented at trial was that the crew damaged the system. We disagree.

[25] First, we must note that, as we expressed in *Herren v. Dishman*, 1 N.E.3d 697, 702 (Ind. Ct. App. 2013),

> Judgments in small claims actions are subject to review as prescribed by relevant Indiana rules and statutes. Indiana has specific rules for small claims cases, but the Indiana Rules of Trial Procedure will generally apply unless the particular rule in question is inconsistent with something in the small claims rules. In accordance with Trial Rule 52(A), the findings or judgments rendered in a bench trial must be upheld unless clearly erroneous. Deference to the small claims court is essential as the trials are

---

[6] Foegley Landscape argues that Smith waived his claims by failing to file a timely appeal. We disagree as the small claims court denied his motion to correct error on April 22, 2014, and he filed his notice of appeal with this Court on May 21, 2014. *See* App. R. 9 (stating that a party has thirty days after a trial court rules on a motion to correct error to file a notice of appeal with the Clerk of the Court of Appeals).

designed to speedily dispense justice by applying substantive law between the parties in an informal setting. This court considers the evidence and related inferences in a light most favorable to the judgment, presuming that the small claims court applied the law correctly and giving due regard to the trial court's opportunity to judge the credibility of the witnesses. However, this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. The burden of proof in a small claims civil suit is the same as it would be had the case been filed in a general trial court.

(internal citations and quotations omitted).

[26] Here, the small claims court did not make findings about whether Foegley Landscape damaged Smith's drainage system. When the trial court makes no findings of fact, we presume the judgment is based on findings supported by the evidence. *Rueth v. Quinn*, 659 N.E.2d 684, 687 (Ind. Ct. App. 1996), *trans. denied.* We must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *Id.* When making this determination, we do not reweigh the evidence or assess the credibility of witnesses. *Id.* Instead, we consider only the evidence most favorable to the judgment, together with all reasonable inferences drawn therefrom. *Id.*

[27] While we acknowledge that Foegley Landscape did not attempt to admit its employees' affidavits at trial, there was other evidence in the record disputing Smith's claim that Foegley Landscape's crew had damaged the Smiths' drainage system. Laskowski testified that he "was in daily communication with the crews that were [at the Smith house] and [that] they said they never ran into

any tiles." (Tr. 23). He also explained that drain tiles are "extremely" difficult to remove because when they have been in the ground for a while, they have a lot of debris in them, and tree and shrub roots anchor them into the ground. (Tr. 37). Due to this difficulty, he said that Foegley Landscape would typically cap a drain tile and leave it underground before the company would remove one.

[28] Based on these details, we conclude that there was evidence in the record that Foegley Landscape did not damage the drainage system. Because all of Smith's claims, in regards to both the claim and counterclaim, are based on his assertion that Foegley Landscape damaged his drainage system, and, because we have found that there was evidence that it did not damage the system, we need not address the remainder of his arguments. We may affirm a trial court's general judgment on any legal theory supported by the evidence. *See Rueth*, 659 N.E.2d at 687. Accordingly, we conclude that the small claims court's judgments in favor of Foegley Landscape were not erroneous.

## 2. Attorney Fees

[29] Next, Smith argues that even if we affirm the small claims court's judgments, we should still reverse its award of attorney fees because the amount the small claims court awarded was unreasonable. He has two grounds for this argument—first, that it was unreasonable to award Foegley Landscape an amount for Attorney Murphey's fees because Attorney Murphey was hired by the company's insurer and, therefore, Foegley Landscape did not incur Attorney Murphey's fees; and, second, the small claims court's award of

Attorney Murphey's fees was unreasonable because he did not submit any documentation for the work he did to justify the fees.[7]

[30] When reviewing an award of attorney fees, we apply the clearly erroneous standard to factual determinations, review legal conclusions de novo, and determine whether the decision to award fees and the amount of the award constituted an abuse of the trial court's discretion. *Storm Damage Specialists of America v. Johnson*, 984 N.E.2d 660, 667 (Ind. Ct. App. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[31] Generally, Indiana follows the American Rule, which requires each party to pay his or her own attorney fees. *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 58 (Ind. Ct. App. 2009), *trans. denied.* However, parties may shift the obligation to pay such fees through contract or agreement, and courts will enforce the agreements as long as they are not contrary to law or public policy. *Id.*

[32] As for Smith's first argument—that Foegley Landscape's insurer actually paid for Attorney Murphey's fees—we note that Attorney Masters never explicitly stated that Foegley Landscape's insurer had retained Attorney Murphey or paid Attorney Murphey's fees. Instead, Attorney Murphey averred in his affidavit that he represented Foegley Landscape, and he also entered his appearance in

---

[7] Notably, Smith does not challenge the reasonableness of Attorney Masters' fees.

the case on behalf of Foegley Landscape. Nevertheless, we need not resolve any factual inconsistencies because Smith's argument does not have merit even if Foegley Landscape's insurer did retain and pay Attorney Murphey.

[33] Indiana courts have repeatedly held that a party is not required to personally pay the bills for his representation in order to be eligible for an award of attorney fees. *Rand v. City of Gary*, 834 N.E.2d 721, 722 (Ind. Ct. App. 2005) (awarding a fiscal officer of the City of Gary, Indiana attorney fees even though the City of Gary was paying the fees). In *Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assoc.*, 758 N.E.2d 931, 944 (Ind. Ct. App. 2001), we held that "the trial court is not constrained to award attorney fees only when those fees have been directly billed to and paid by a party." Instead, "the relevant inquiry is whether a party has *incurred* attorney fees." (Emphasis in original) (implying that "incurring fees" is not equivalent to incurring the obligation to pay those fees). Based on this precedent, we conclude that the small claims court did not abuse its discretion in awarding Foegley Landscape an amount for Attorney Murphey's fees, regardless of whether Attorney Murphey's fees were paid by Foegley Landscape's insurer.

[34] Second, Smith argues that the small claims court abused its discretion in awarding Foegley Landscape attorney fees for Attorney Murphey's representation. Specifically, he claims that Attorney Murphey's fee was speculative, and therefore unreasonable, as Attorney Murphey did not submit any documentation clarifying what work he did on the case or how he calculated his fee. We agree with Smith.

Even when a contract provides for a recovery of attorney fees, the attorney fees recovered must be reasonable.[8] *Id.* The determination of reasonableness of attorney fees necessitates consideration of all relevant circumstances. *Id.* Factors to consider include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skills requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

*Weiss v. Harper*, 803 N.E.2d 201, 208 (Ind. Ct. App. 2003).

---

[8] This contract also explicitly provides that the fees must be "reasonable." (Foegley's Ex. 1).

[36] Judicial notice of the reasonableness of attorney fees is permitted in certain routine actions, such as dissolutions of marriage, in which modest fees are sought. *Loudermilk v. Casey*, 441 N.E.2d 1379, 1387 (Ind. Ct. App. 1982). However, where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee. *Stewart,* 911 N.E.2d at 58.

[37] In *Fortner v. Farm Valley-Applewood Apartments*, 898 N.E.2d 393, 400 (Ind. Ct. App. 2008), this Court held that an attorney fee award of $1,335.04 in a small claims action—which is an award approximately equivalent to the instant case—was consequential enough that it required objective evidence of the nature of the legal services and reasonableness of the fee. We held that the trial court had abused its discretion in awarding the fee because there was nothing in the record establishing the number of hours that the counsel had spent on the case or the counsel's hourly rate. *Id.* Likewise, in *Loudermilk* we held that a trial court had abused its discretion in awarding attorney fees because there was no evidence of the value of the lawyer's services, the nature of his services, or the time the lawyer had spent on the case. *Loudermilk*, 441 N.E.2d at 1387. We noted that a lawyer was required to provide evidence of the value of his service even when the lawyer's fees equaled only six percent of the total damages awarded. *Id.* (discussing *Parrish v. Terre Haute Sav. Bank*, 431 N.E.2d 132 (Ind. Ct. App. 1982), *reh'g denied*, *trans. denied*).

[38] Here, the small claims court awarded attorney fees in the amount of $1,500, which is a significant portion of the total damages of $5,410.55. Because

Attorney Masters provided documented evidence that his services were worth $500 in attorney fees, we attribute the remaining $1,000 to Attorney Murphey. Yet, there is no evidence in the record concerning the nature of Murphey's representation, the hours he spent on the case, or his hourly charge. He merely submitted an affidavit to the small claims court stating that, as a result of his representation, Foegley Landscape had incurred costs and legal expenses of $4,045.90 related to the litigation. Absent information concerning the nature of Attorney Murphey's services, the small claims court could not have properly evaluated the reasonableness of his fees and therefore abused its discretion in awarding attorney fees. Accordingly, we reverse the small claims court's award of attorney fees with respect to Attorney Murphey and remand to the small claims court to hold a hearing and determine reasonable attorney fees for Attorney Murphey.[9] *See Fortner*, 898 N.E.2d at 400 (remanding to the trial court to hold a hearing and determine reasonable attorney fees when there was insufficient evidence to support the trial court's award of attorney fees); *Loudermilk*, 441 N.E.2d at 1388 (remanding for further proceedings when there was insufficient evidence to support the reasonableness of the trial court's award of attorney fees).

---

[9] Significantly, we note that, by filing an action in the small claims court, Foegley Landscape waived its right to recover more than the $6,000 jurisdictional limit of the small claims court. *Hoang v. Jamestown Homes, Inc.*, 768 N.E.2d 1029, 1035 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We are affirming the trial court's judgment of $3,910.55 for the amount owed under the contract, plus interest; $94 in court costs; and $500 for Attorney Masters' attorney fees, so those amounts contribute to the $6,000 jurisdictional limit. Therefore, the maximum amount Foegley Landscape may recover for Attorney Murphey's fee on remand is $1,495.45.

[39]    Affirmed in part, reversed in part, and remanded.

Barnes, J., and May, J., concur.