## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 08 2018, 9:26 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randy Lee Higgins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 8, 2018

Court of Appeals Case No.
79A02-1706-CR-1299

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1603-F5-46

**Altice, Judge.**

## Case Summary

[1] Randy Lee Higgins appeals his convictions for two counts of Level 6 felony possession of child pornography and one count each of Class A misdemeanor possession of a controlled substance and Level 5 felony possession of methamphetamine. Higgins presents the following restated issues for review:

1) Did the trial court abuse its discretion by denying Higgins's motion for a continuance – made on the first day of trial – to allow him time to retain private counsel?

2) Did the trial court abuse its discretion by allowing the State to introduce a limited history of Google searches performed by Higgins?

3) Is Higgins's sentence inappropriate?

4) Did the trial court err in ordering the balance of Higgins's cash bond paid to the public defender's office where no evidence was presented regarding the cost of representation?

[2] We affirm.

## Facts & Procedural History

[3] S.B. (Mother) was in a relationship with Higgins for several years, and the two have a child together, who was born in March 2012. Higgins spent most nights at Mother's apartment, where she lived with their child and her two older minor children. Higgins acted as a care giver to all of the children in the home.

[4] Late at night on March 20, 2016, Mother searched Higgins's iPhone while he was asleep because she suspected that he was being unfaithful. She observed

video clips in his Google account that depicted her thirteen-year-old daughter M.H. in the upstairs bathroom using the toilet. Mother unsuccessfully attempted to send the videos to herself. The next day, she spoke with a neighbor about retrieving the videos from the phone for proof. The neighbor suggested that Mother speak to the police and then contacted the police on Mother's behalf. Around 11:30 p.m., Officer Adam Ransom was dispatched to the apartment complex. The neighbor spoke with Officer Ransom, who then met with a "very paranoid, frightened, … shaking" Mother at a nearby Taco Bell. *Transcript Vol. 2* at 210.

[5] On March 22, 2016, Officers obtained a search warrant for the residence, Higgins's person and car, and his iPhone. The warrant was executed that afternoon with Mother, Higgins, and M.H. present. A small metal canister was recovered from Higgins's person. Later testing revealed that it contained methamphetamine and M.D.A., a controlled substance. Police also seized, among other things, his iPhone, a key fob camera with Velcro attached to the back, additional unused Velcro pads, a wireless camera with remote access and tape over the light on the face of the camera that turns on when in use, and drug paraphernalia.

[6] A subsequent investigation of Higgins's iPhone and Google drive revealed four edited videos (one a duplicate) of M.H. in the bathroom, using the toilet or showering. The videos showed M.H.'s uncovered breasts and/or genitalia. These videos appeared to have been placed on Higgins's Google drive in February and March 2016. The investigation also yielded Higgins's search

history on Google. Between January 1 and March 19, 2016, this history included a number of searches for information on "hidden bathroom cam", "key fob spy camera instructions", "hotel room naked", "sexy nude girls hidden bathroom camra [sic]", and "spying sexy 19-year-old girl", as well as "teens" and "nude girls" on a pornographic site. *Exhibits* at State's Exhibit 63BR.

[7] When interviewed by police on March 22, 2016, Higgins vehemently denied knowledge of the videos of M.H. He suggested that Mother placed the edited videos on his phone and in his Google drive to set him up. With respect to the drugs recovered from his pocket, Higgins indicated that he had just picked up the metal container off the ground in the parking lot minutes before the search. He claimed that the drugs were not his, though he knew there were probably drugs inside the container. Higgins was arrested at the conclusion of the interview.

[8] The State charged Higgins with two counts of Level 5 felony child exploitation (Counts I and II), two counts of Level 6 felony possession of child pornography (Counts III and IV), and one count each of Level 6 felony voyeurism (Count V), Level 5 felony possession of methamphetamine (Count VI), Level 6 felony possession of methamphetamine (Count VIII), and Class A misdemeanor possession of a controlled substance (Count IX). The State also filed a habitual offender sentencing enhancement (Count VII).

[9] Private attorney Andrew Achey filed an appearance on Higgins's behalf on April 15, 2016. On December 27, 2016, Achey petitioned the trial court to

withdraw his appearance due to nonpayment of fees. The trial court denied the motion because the jury trial, which had a priority setting, was less than a month away. Achey renewed his motion to withdraw on January 12, 2017, noting a breakdown in the attorney-client relationship. That same day, Higgins filed a request for appointment of a public defender. Following a hearing, the trial court granted Achey's motion, vacated the scheduled jury trial, and appointed counsel for Higgins on January 23, 2017. Matthew Harris entered an appearance as Higgins's public defender, and the jury trial was rescheduled for April 25, 2017.

[10] On the morning of trial, Higgins requested a continuance to hire private counsel. The trial court denied this request, and the case proceeded to trial. The jury found Higgins guilty of Counts III, IV, VI, VII, and VIII. The jury could not reach a verdict on the child exploitation and voyeurism counts, Counts I, II, and V, so these counts were dismissed on the State's motion. The State also dismissed the habitual offender enhancement.

[11] At the conclusion of the sentencing hearing on May 19, 2017, the trial court vacated Count VI and sentenced Higgins to two years on both Counts III and IV, one year on Count VII, and five years on Count VIII. The court ordered Counts III and IV to be served concurrently with each other and Counts VII and VIII to be served concurrently with each other and consecutive to Count III. Thus, Higgins received an aggregate sentence of seven years in prison. The trial court ordered five years of the sentence executed and two years suspended to probation.

[12] Additionally, upon hearing evidence and determining that Higgins had the ability to pay, the trial court ordered the release of the balance of Higgins's cash bond to "the Tippecanoe County Public Defender to defray from the costs of representation…in this matter". *Appellant's Appendix Vol. II* at 15. Higgins now appeals. Additional facts will be provided below as needed.

## Discussion & Decision

### Denial of Continuance

[13] Higgins initially challenges the denial of his motion for a continuance. He made this motion on the morning of his scheduled jury trial, indicating that he could now retain private counsel because he was no longer incarcerated and was working, making $34 per hour. Higgins claimed that Harris, his appointed counsel, had been ineffective for not filing a motion regarding the search warrant, failing to timely provide documents to Higgins, and misleading him. Harris clarified that he refused to file the requested motion based on his professional judgment and Higgins's best interests. Harris also affirmed that Higgins had been present during the depositions taken in this case. Finally, Harris indicated that he was prepared and ready to go to trial.

[14] In denying the continuance, the trial court noted that the case had been pending for more than a year and that Higgins had private counsel before the appointment of Harris. The court then stated, "you've had plenty of opportunity to consider and get private counsel if that was your choice. To

come in here on the day of trial and ask for a continuance is a little late".
*Transcript Vol. 2* at 62.

[15] The right to counsel of one's choice is not absolute, and it is well settled that this right "must be exercised 'at the appropriate stage of the proceeding.'" *Lewis v. State*, 730 N.E.2d 686, 689 (Ind. 2000) (quoting *Parr v. State*, 504 N.E.2d 1014, 1016 (Ind. 1987)). *See also Perry v. State*, 638 N.E.2d 1236, 1241 (Ind. 1994) ("[c]ontinuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers, and the court"). It is within a trial court's sound discretion to deny a last-minute continuance to hire new counsel. *See Lewis*, 730 N.E.2d at 689.

[16] Higgins moved for a continuance on the first day of trial, with no indication that he had already retained new counsel. The case had been pending for over a year, and Higgins's previous change of counsel in January had already resulted in several months of delay. The trial court clearly acted within its discretion in denying Higgins's eleventh-hour motion.

## Admissibility of Evidence

[17] Higgins contends that the trial court abused its discretion by admitting State's Exhibit 63BR, which contained his Google search history from January through March 2016. He claims this evidence should have been excluded under Indiana Evidence Rule 403 because the evidence "bore little relevance to the case, but was highly prejudicial." *Appellant's Brief* at 17.

[18]     We review evidentiary rulings for an abuse of discretion, which will be found where the ruling is clearly against the logic and effect of the facts and circumstances. *Zanders v. State*, 73 N.E.3d 178, 181 (Ind. 2017), *cert. pending*. On issues of relevance and unfair prejudice, a trial court's discretion is wide. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). As our Supreme Court emphasized in *Snow*, this discretion often allows the trial court to resolve determinations under Indiana Evidence Rules 401 and 403 either way:

> Trial judges are called judges for a reason. The reason is that they conduct trials. Admitting or excluding evidence is what they do. That's why trial judges have discretion in making evidentiary decisions. This discretion means that, in many cases, trial judges have options. They can admit *or* exclude evidence, and we won't meddle with that decision on appeal. There are good reasons for this. Our instincts are less practiced than those of the trial bench and our sense for the rhythms of a trial less sure. And trial courts are far better at weighing evidence and assessing witness credibility. In sum, our vantage point—in a far corner of the upper deck—does not provide as clear a view.

*Id.* at 177 (internal quotations and citations omitted; emphasis in original).

[19]     The trial court thoroughly considered Higgins's objection to the evidence in question. The court found that the search history from January 1 to March 19, 2016, was relevant to establish Higgins's intent/motive/plan given that Higgins had denied knowledge of the videos and stressed that someone else must have put them there. On appeal, Higgins does not dispute that the evidence was relevant in this regard. He simply argues that the relevance was low. We cannot agree. Comingled with mundane searches, Higgins's Google history

included searches for "hidden bathroom cam", "key fob spy camera instructions", "hotel room naked", "sexy nude girls hidden bathroom camra [sic]", and "spying sexy 19-year-old girl". *Exhibits* at State's Exhibit 63BR. These searches occurred during the time that M.H. was being surreptitiously filmed in the bathroom. The probative value of this evidence was significant and not substantially outweighed by the danger of *unfair* prejudice. Accordingly, the trial court did not abuse its discretion.

## Sentence

[20] Next, Higgins contends that his aggregate sentence of seven years is inappropriate in light of the nature of his offenses and his character. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Alvies v. State*, 905 N.E.2d 57, 64 (Ind. Ct. App. 2009) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218). This appellate authority is implemented through Ind. Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Anglemyer*, 868 N.E.2d at 491. Nevertheless, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v.*

*State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The appellant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[21] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). "The principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[22] Before focusing on the nature of the offenses and Higgins's character, we address his rather bald claim that the trial court imposed the "absolute maximum sentence" in this case. *Appellant's Brief* at 21. The sentencing range for the Level 6 felony possession of child pornography offenses was six months to two and one-half years. Ind. Code § 35-50-2-7(b). The trial court imposed concurrent two-year terms. The range for the Level 5 felony possession of methamphetamine was one to six years. The trial court imposed five years and ran that concurrent with the one-year sentence for the Class A misdemeanor

possession offense.  I.C. § 35-50-2-6(b).  The court then ordered the five-year sentence to be served consecutive to the two-year sentence.

[23]   Higgins asserts that pursuant to I.C. § 35-50-1-2(d)(2), the total consecutive terms of imprisonment imposed by the trial court could not exceed seven years.  This is true only if the offenses all arose out a single episode of criminal conduct (i.e., they were closely related in time, place, *and* circumstance).  I.C. § 35-50-1-2(b).  Higgins has not made such a showing, nor could he.  Moreover, even if this seven-year limitation applied, we observe that the trial court ordered only five years of the sentence executed and two years suspended to probation.  Thus, Higgins did not receive the maximum sentence for his crimes.

[24]   Turning to the nature of the offenses, we note that the victim of the child pornography offenses was in Higgins's care, custody, or control.  Indeed, Higgins was a father figure to her.  The trial court also noted the particularly serious impact these crimes had on M.H. and her family.  In addition to the ongoing anxiety, fear, and shame felt by M.H., the family became homeless for a period of time as a result of Higgins's actions.  Further, when confronted with clear evidence of his crimes, Higgins concocted stories and accused others, including M.H.'s own mother.  Instead of expressing remorse at the sentencing hearing, Higgins focused his testimony on unrelated allegations against Mother.

[25]   With respect to his character, we acknowledge that Higgins has an impressive work history when not incarcerated.  Overshadowing this, however, is his significant criminal history and the fact that he was on probation when he

committed the present offenses. Between 2003 and 2016, Higgins has accrued one Class B felony conviction, three Class D felony convictions, and one Class A misdemeanor conviction, with several other charges filed and dismissed as a result of plea agreements. Higgins has spent many years incarcerated and despite being granted leniency in his earlier cases, he has repeatedly violated probation, resulting in additional incarceration. His probation has been unsuccessfully terminated in four separate cases.

[26] In sum, Higgins's character and the nature of the offenses do not warrant a downward revision in his seven-year, partially-suspended sentence.

### Public Defender Fees

[27] During the sentencing hearing, the trial court heard evidence regarding Higgins's income and work history. The court determined that Higgins had the ability to pay part of the costs of his representation by the public defender. Accordingly, the court ordered the balance of the $2005 cash bond – after deducting court costs and probation fees totaling $413 – to be paid to the public defender's office to defray its costs in representing Higgins.

[28] Ind. Code § 33-37-2-3(e) provides that if the trial court determines, following an indigency hearing, that "a convicted person is able to pay part of the costs of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the person." Higgins does not dispute the trial court's finding regarding his ability to pay or that costs and fees may be deducted from his cash bond. He argues only that no evidence

was presented at the hearing regarding the actual costs of defense services rendered on his behalf.

[29] The State concedes that the record is silent regarding the cost of defense services. Thus, the State asks that we remand to the trial court for a determination of said costs.

[30] Under the circumstances, we do not believe remand is necessary. The trial court ordered the remaining balance – $1592 – of Higgins's cash bond to be paid to the public defender's office toward the costs of representation. It cannot reasonably be disputed that the actual cost of representing Higgins far exceeded this amount. *Cf. Smith v. Foegley Landscape, Inc.*, 30 N.E.3d 1231, 1240 (Ind. Ct. App. 2015) ("Judicial notice of the reasonableness of attorney fees is permitted in certain routine actions…in which modest fees are sought."). The record reveals that the public defender took depositions in the months leading up to trial, met with Higgins and provided him with lengthy documents, and represented Higgins in a three-day jury trial. While the better practice is for the public defender to present some testimony or evidence regarding the costs of representation, it is clear here that Higgins was not ordered to pay more than the cost of the defense services rendered to him.

[31] Judgment affirmed.

May, J. and Vaidik, C.J., concur.